NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY, | : : : : | Civil Action No. 22-3338-JKS-AME |
| Plaintiff, | : : | OPINION and ORDER |
| v. | : : | |
| BERGEN COUNTY PROTECT AND RESCUE FOUNDATION, et al., | : : : | |
| Defendants. | : : | |

**ESPINOSA**, Magistrate Judge

This matter is before the Court on the motion by defendant Cindy Aleman ("Aleman") for leave to file an Amended Answer and Counterclaims, pursuant to Federal Rule of Civil Procedure 15(a)(2) [D.E. 35]. Plaintiff Scottsdale Insurance Company ("Scottsdale") opposes the motion. Defendants Bergen County Protect & Rescue Foundation ("BCPR") and Vincent Ascolese ("Ascolese"), though named in the Complaint, have not entered an appearance in this action and, accordingly, take no position on this motion. The Court has considered the parties' written submissions and, in its discretion, rules without oral argument. *See* Fed. R. Civ. P. 78. For the following reasons, Aleman's motion for leave to amend is granted.

**I.    BACKGROUND**

Scottsdale, an insurance carrier, filed this declaratory judgment action seeking a ruling concerning its coverage obligations for tort claims brought by Aleman against BCPR, a now-defunct animal shelter, and its director Ascolese. Relevant to this matter, Scottsdale issued a Commercial General Liability Policy to BCPR for the period May 31, 2018, to May 31, 2019

(the "Policy"). (*See* Compl. Ex. A.) The underlying action, filed in the Superior Court of New Jersey, Bergen County, arose from serious injuries sustained by Aleman on November 22, 2018, when she was attacked by a dog while volunteering at BCPR (the "Underlying Action"). Aleman ultimately obtained a judgment in the Underlying Action against BCPR, Scottsdale's insured, and now seeks leave to assert counterclaims against Scottsdale to recover that judgment under the Policy. The following summary sets forth facts pertinent to this motion.

Aleman filed the Underlying Action on or about July 13, 2020, alleging BCPR and Ascolese were liable for her injuries for failure to exercise due care despite knowing that the dog that attacked her was aggressive. (Compl., Ex. B. ¶¶ 3-5.) At the time of the incident, Aleman was attempting to help another volunteer return the dog, a pit bull mix, to its enclosure when it bit Aleman in the forearm. (*See* Compl. ¶¶ 23-24.) The dog latched on to Aleman's arm for several minutes, causing her to bleed profusely, suffer multiple fractures, and require emergency medical attention. (*Id.*; Kokalas Decl., Jan. 31, 2023, Ex. 2.)[1] Thereafter, Aleman underwent several surgeries to treat her injuries. (First Kokalas Decl., Ex. 13.)

BCPR and Ascolese initially failed to appear in the Underlying Action. Following a proof hearing, the Superior Court entered default judgment against Ascolese on November 24, 2021, in the amount of $250,000. (*Id.*, Ex. 8.) On or about December 8, 2021, after he received notice of that judgment, Ascolese notified Scottsdale, though its claims administrator, of the Underlying Action and requested representation and coverage. (*Id.*, Ex. 9.) Scottsdale denied coverage, citing, among other grounds, the Policy's "Injury to Volunteers Exclusion," which provides:

---

[1] The January 31, 2023 Declaration of Marci Kokalas, Scottdale's counsel [D.E. 19-1], is referred to herein as "the First Kokalas Decl."

2

"This insurance does not apply to 'bodily injury' or 'personal injury' to any volunteer worker(s) arising out of their activities as a volunteer" (the "Volunteer Exclusion").[2] (*Id.*, Ex. 10 at 6.) However, Scottsdale offered to provide its insured, BCPR, and Ascolese a defense in the Underlying Action, "including seeking to set aside the default and Judgment," but expressly stated its "offer to defend the Insured and Mr. Ascolese for the [Underlying Action] and Judgment is subject to a full and complete reservation of all of Scottsdale's rights under the Scottsdale Policy, at law, and in equity." (*Id.*, Ex. 11 at 8.) Scottdale's reservation of rights included "specifically . . . its right to disclaim coverage . . . and to file a lawsuit seeking a judicial declaration that there is no coverage available to the Insured for the [Underlying Action] and Judgment under the Scottsdale Policy." (*Id.*)

Thereafter, through counsel, BCPR and Ascolese moved to vacate the November 24, 2021 judgment, and an order granting that motion and restoring the Underlying Action to the active calendar was entered on March 18, 2022. (*Id.*, Ex. 12.) The Underlying Action was submitted to non-binding arbitration, pursuant to New Jersey Court Rule 4:21A-6, resulting in an award of $125,000 in favor of Aleman. (*Id.*, Ex. 13.) Upon Aleman's motion, the Superior Court confirmed the arbitration award by order of February 17, 2023, entering judgment "in favor of

---

[2] According to its January 7, 2022 letter, Scottsdale was first notified of the Underlying Action upon Ascolese's December 8, 2021 communication, reporting a judgment had been entered against him. However, the letter also states that insured party BCPR notified Scottsdale of the dog bite incident involving Aleman on or about September 11, 2019. Scottsdale issued a disclaimer letter, dated September 19, 2019, advising there was no coverage due to the Policy's Volunteer Exclusion. (First Kokalas Decl., Ex. 10.)

3

Plaintiff [Aleman] against Bergen County & Protect Rescue Foundation [sic] <u>only</u>, in the amount of $125,000.00, plus interest" (the "Judgment"). (Maitlin Cert., Ex. C, emphasis in original.) [3]

On June 1, 2022, while the Underlying Action remained pending, Scottsdale filed this action for a declaration it has no coverage obligation as to Aleman's claim against BCPR and Ascolese. Aleman filed her Answer to the Complaint on September 21, 2022. BCPR and Ascolese failed to appear, and Scottsdale thereafter moved for entry of default judgment against them.

On July 10, 2023, the District Court denied Scottdale's default judgment motion, finding the coverage issues presented by the motion were "premature and contingent" in view of Aleman's as-yet unsatisfied Judgment and the possibility that, if her efforts to enforce that Judgment against BCPR proved futile, she may be entitled to pursue Scottsdale for relief under the Policy. (Op. at 5, D.E. 26.) The Court concluded the coverage issues presented by Scottsdale would ripen in the event Aleman, the real party in interest in this case, opted to bring a direct action against Scottsdale for satisfaction of the Judgment. (*Id.* at 5-6.)

Whether Aleman may pursue such a direct action for insurance coverage is the question now before this Court on Aleman's motion for leave to amend.

---

[3] The Judgment contains a strikethrough notation eliminating "Vincent Ascolese" from the order. (Maitlin Cert., Ex. C.) In reviewing the motion to confirm the arbitration award, the Superior Court noted that the arbitrator apportioned no liability to Ascolese. (Maitlin Cert., Ex. C.) The Court held that, because no objections to the award had been filed within the time provided by the governing rule, alteration of the proposed form of judgment order submitted by Aleman was necessary to conform the Judgment to the arbitration award. (*Id.*)

## II.  DISCUSSION

### A.  Legal Standard

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). The Rule "embodies a liberal approach to pleading," in favor of granting leave to amend unless it would be unjust. *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202-03 (3d Cir. 2006). Equitable considerations that may justify denying leave include futility of the amendment, a party's undue delay in seeking leave to amend, prejudice to the non-moving party, and bad faith. *Id.* at 203 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, Scottsdale opposes Aleman's motion on the basis that amendment would be futile. Futility in the context of a motion for leave to amend a complaint means the proposed claim would not withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) ("In assessing futility, the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."); *see also In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (holding same). The standard of review applicable to a Rule 12(b)(6) motion requires the Court to evaluate whether a complaint sets forth sufficient factual allegations, which, taken as true, plausibly establish the elements of a claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding a legally sufficient complaint must contain factual allegations, accepted as true, stating a plausible claim for relief). However, "[g]iven the liberal standard for the amendment of pleadings [under Rule 15], 'courts place a heavy burden on opponents who wish to declare a proposed amendment futile.'" *High 5 Games, LLC v. Marks*,

No. 13-7161, 2017 WL 349375, at *5 (D.N.J. Jan. 24, 2017) (quoting *Pharma. Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000)).

### B.     Direct Action Claim

Although Aleman is not a party to the Policy, she seeks to assert a claim thereunder against Scottsdale for recovery of the Judgment she holds against its insured BCPR. "As a general rule, an individual or entity that is 'a stranger to an insurance policy has no right to recover the policy proceeds.'" *Ross v. Lowitz*, 222 N.J. 494, 512 (quoting *Gen. Accident Ins. Co. v. N.Y. Marine & Gen. Ins. Co.*, 320 N.J. Super. 546, 553–54, 7 (App. Div.1999)). However, New Jersey law recognizes a "direct action" claim by a third party against an insurance carrier under certain circumstances, as codified in N.J.SA. 17:28-2 (the "Direct Action Statute"). In relevant part, the Direct Action Statute requires all insurance policies against personal injury for which the insured is liable to contain

> a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of the policy, and stating that in case execution against the insured is returned unsatisfied in an action brought by the injured person . . . because of the insolvency or bankruptcy, then an action may be maintained by the injured person . . . against the corporation under the terms of the policy for the amount of the judgment in the action not exceeding the amount of the policy.

NJSA 17:28-2. In other words, as interpreted by the Supreme Court of New Jersey "[t]he Direct Action Statute authorizes an injured claimant holding an unsatisfied judgment against an insolvent or bankrupt policyholder to file a direct action against an insurer in certain settings. That action must proceed 'under the terms of the policy ....'" *Crystal Point Condo. Ass'n v. Kinsale Ins. Co.*, 251 N.J. 437 (2022) (quoting N.J.S.A. 17:28-2)); *see also Dransfield v. Citizens Cas. Co. of N.Y.*, 5 N.J. 190, 194 (1950) (holding, as a matter of public policy, that "while the

injured person has no greater right under the policy than has the assured, he has a cause of action the moment he is injured, which ripens into a right of action [against the insurance carrier] when he recovers a judgment against the assured whose insolvency is proved by the return of an execution unsatisfied"); *Chiaravalle v Imperium Ins. Co.*, No. 13-1818, 2013 WL 4012552, at *3 (D.N.J. Aug. 2, 2013) (noting New Jersey's Direct Action Statute "provides that when an injured party who has obtained a judgment against an insured party cannot execute the judgment due to the insured's insolvency or bankruptcy, the injured party can proceed directly against the insurance carrier for the amount of the judgment not exceeding the amount of the policy").

Scottsdale argues that Aleman fails to plead a viable direct action claim for two reasons. It contends that Aleman lacks standing to pursue a direct action claim for failure to establish that the Judgment cannot be executed as to BCPR due to its insolvency or bankruptcy. It further contends that, even if Aleman has standing to assert the claim, the Policy precludes coverage for her bodily injury claim under the Volunteer Exclusion, rendering the claim futile.

The Court finds Scottsdale has failed to carry its burden to defeat the proposed claim on grounds of futility. There is no dispute that Aleman is now a judgment creditor as to Scottsdale's insured, BCPR, which, according to the record, has not been in operation since April 2019. (*See* Ascolese Cert. at ¶ 6, attached to Maitlin Cert. as Ex. E.) [4] As such, Plaintiff proffers the minimal requirements for asserting a cognizable direct action claim against Scottsdale. *See D'Agostino v Colony Ins. Co.*, No. A-5331-18, 2022 WL 1553717 (App. Div. 2022) (reversing dismissal of the plaintiff's complaint for lack of standing to bring a direct action claim, reasoning that, as

---

[4] This Court may take judicial notice of matters of public record, including "proceedings in other courts that relate to matters at issue." *Liberty Int'l Underwriters Canada v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 325 (D.N.J. 2013); *see also Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022).

required, the complaint alleged the plaintiff's personal injury judgment remained unsatisfied due to the insured tortfeasor's insolvency), *certif. denied* 254 N.J. 72 (2023). Although Scottsdale has questioned whether the statutory prerequisite that the policyholder tortfeasor be insolvent or bankrupt is actually fulfilled here, contending Aleman fails to demonstrate BCPR's insolvency in the manner set forth by the Direct Action Statute, the Court deems it premature to make such a factual assessment on this motion for leave to amend.

Scottsdale's argument that Aleman's claim could not withstand a motion to dismiss because the Policy does not cover her loss also fails to establish futility. Aleman alleges the incident giving rise to her claim occurred within the Policy period, on insured BCPR's premises in the course of its operations. Scottsdale argues the claim would nevertheless fail due to the applicability of a coverage exclusion. However, under New Jersey law, "[i]nsurance policy exclusions 'must be narrowly construed; [and] the burden is on the insurer to bring the case within the exclusion.'" *Liberty Ins. Corp. v. Tinplate Purchasing Corp.*, 743 F. Supp. 2d. 406, 411 (D.N.J. 2012) (quoting *Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 95 (1997)). Scottsdale's stance as to whether the Policy in fact covers Aleman's claim is not a matter to be resolved at this procedural juncture. *See D'Agostino*, 2022 WL 1553717, at *4 (finding, at the pleading stage of a direct action case, that the defendant insurance carrier's arguments concerning lack of coverage did not bar the claim but rather "raised potential defenses . . . . [that] will have to await discovery"). Its opposition to this motion for leave to amend goes to merits questions exceeding the scope of an analysis under Rule 15, in which the Court's focus is on whether the proposed claim is "sufficiently well-grounded in fact or law that it is not a frivolous pursuit." *High 5 Games, LLC*, 2017 WL 349375 at *5. Here, the Court cannot conclude

Aleman's proposed direct action claim against Scottsdale is so clearly futile that equitable considerations warrant denying her request to amend her Answer to assert this counterclaim.

### C. Reformation Claim

Aleman also seeks to assert a counterclaim for reformation of the Policy. The proposed amended pleading states that "[i]f it is determined that the Scottsdale Insurance Company insurance policy as written does not afford coverage for Ms. Aleman's claim then the policy should be reformed to afford such coverage either because of mutual mistake in the issuance of the policy or unilateral action of Scottsdale in failing to issue a proper policy." (Maitlin, Ex. A, Count Two,¶ 16.) Scottsdale argues that leave to bring this claim should be denied because the pleading lacks factual allegations demonstrating the claim is plausible and because Aleman will not be able to prove she is entitled to reformation of the Policy.

Reformation of an insurance policy is a form of equitable relief recognized under New Jersey law. *See Huggins v. Aquilar*, 246 N.J. 75, 90 (2021). Neither Aleman nor Scottsdale have cited a binding decision issued by the Supreme Court of New Jersey resolving whether an injured third party's right to assert a direct action claim encompasses the right to pursue the equitable remedy of reformation. However, in *D'Agostino*, the New Jersey Appellate Division declined to foreclose the direct action plaintiff from claiming, in his complaint, that the insurance policy issued to the tortfeasor should be reformed to provide coverage. *D'Agostino*, 2022 WL 1553717, at *4. While the viability of the plaintiff's reformation claim was not squarely before the Court on appeal, *D'Agostino* observed that other Appellate Division decisions suggested that, as a matter of public policy, a judgment creditor's right to sue the insurer in a direct action might also confer sufficient third-party beneficiary status to pursue complete relief. *Id.* (citing

9

*Northfield Ins. Co. v. Mt. Hawley Ins. Co.*, 454 N.J. Super. 134, 149-50 (App. Div. 2018) and *Crystal Point Condo Ass'n, Inc. v. Kinsale Ins. Co.*, 466 N.J. Super. 471, 483-84 (App. Div. 2021), *reversed on other grounds*, 251 N.J. 437 (2022)). Thus, *D'Agostino* held that "plaintiff's claim for reformation of the policy cannot be foreclosed at this point and return[ed] the case to the trial court for development of a record." *Id.*

In light of the foregoing and given the liberal standard of Rule 15, this Court declines to bar Aleman from pleading her reformation claim on grounds of futility.[5]

### III.  CONCLUSION AND ORDER

In its discretion, the Court concludes that futility of amendment does not constitute an appropriate basis for precluding Aleman from amending her Answer to assert the counterclaims set forth in her proposed amended pleading. For the foregoing reasons, leave to amend is warranted pursuant to Rule 15(a)(2). Accordingly,

**IT IS** on this on this 24th day of April 2024,

**ORDERED** that Aleman's motion for leave to file an Amended Answer and Counterclaims [D.E. 35] is **GRANTED**; and it is further

**ORDERED** that Aleman shall file her Amended Answer and Counterclaims, as submitted with this motion, within seven days of this Order. Scottsdale shall answer, move, or otherwise respond to the Counterclaims within the time provided by Rule 12(a)(1)(B); and it is further

---

[5] Under Count Two of the proposed counterclaim, Aleman also states that Scottsdale should be estopped from denying coverage. (Maitlin Cert., Ex A, Count Two, ¶ 17.) It is not clear from her motion or proposed pleading whether she seeks leave to assert a separate counterclaim for the equitable relief of estoppel. Nevertheless, the Court will permit the proposed amended pleading to be filed as drafted.

**ORDERED** that the Court will hold an in-person scheduling conference, pursuant to Federal Rule of Civil Procedure 16, on **June 6, 2024, at 2:30 p.m.**, in Courtroom 2D of the Martin Luther King Building and U.S. Courthouse, 50 Walnut Street, Newark. No later than June 4, 2024, the parties shall file a Joint Discovery Plan, based on the following template: [Joint Discovery Plan](#).

      /s/ *André M. Espinosa*
      ANDRÉ M. ESPINOSA
      United States Magistrate Judge